UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Civil Action No.:

6:08-cv 485-0rc-19DAB

ROBERT RHODES,

    Plaintiff,

vs.

FRED OSWALD, an individual, and OZTEC
INDUSTRIES, INC., a New York Corporation

    Defendants.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, ROBERT RHODES, (hereinafter referred to as ("RHODES") by and through his undersigned attorneys, and hereby sues Defendants, FRED OSWALD (hereinafter referred to as "OSWALD") and OZTEC INDUSTRIES, INC. (hereinafter referred to as "OZTEC") and for a cause of action states as follows:

## COMMON FACTUAL ALLEGATIONS

1.    This is an action for damages in excess of $75,000.00, excluding interest, court costs and attorneys fees.

2.    At all times material to the events set forth in paragraphs 6 through 9, RHODES was an individual residing in Lake County, Florida.  At the time of the filing of this Complaint, RHODES is a resident of Dandridge, Jefferson County, Tennessee.

3.    At all times material hereto OSWALD was an individual residing in Nassau County, New York.

4.     At all times material hereto OZTEC was a New York corporation whose principal place of business was located at 65 Channel Drive, Port Washington, Nassau County, New York.

5.     This Court has original jurisdiction in this matter in that the controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States, pursuant to 28 U.S.C. §1332.

6.     Approximately in 2000, RHODES invented a piece of construction equipment known as the Rhodes Rebar Shaker.  The Shaker is a machine that vibrates grout in a blockcell wall by utilizing the rebar as a vibrator.

7.     Approximately in December of 2000, RHODES approached OSWALD at a World of Concrete Convention held at the Orlando, Florida Convention Center where they discussed his invention, the Rhodes Rebar Shaker.

8.     In February of 2001, OSWALD returned to Orlando and met with RHODES at the Marriott Courtyard hotel.  RHODES brought a prototype of the vibrator to demonstrate for OSWALD.  The prototype was tested and worked well.

9.     At said meeting in Orlando, Florida, OSWALD represented to RHODES that RHODES and OSWALD would apply for a patent based on a 50/50 ownership basis.  It was further represented by OSWALD that OZTEC would develop, produce and market the Rebar Shaker and bear all the costs for same and in turn RHODES would receive 10% of gross sales once the product went into production.

10.     At all times material hereto, OSWALD was the authorized agent of OZTEC and was acting within the course and scope of said agency.  OZTEC was designated by OSWALD to

2

be the entity to market and sell the device to be known as the "Oztec Rhodes Rebar Shaker".

11.   At said meeting, OSWALD promised RHODES that a written agreement would be drafted by his attorneys which would reflect the representations made by OSWALD.

12.   Beginning in September of 2001, RHODES inquired numerous times as to the whereabouts of the written agreement to no avail.

13.   On or about December 13, 2001, RHODES and OSWALD filed a joint application for a patent and on March 25, 2002 patent number 6,960,011 was issued for the "vibrator and related method" based upon RHODES' original invention.

14.   On or about February 11, 2002, Attorney Anthony Scremin, on behalf of RHODES, forwarded a written request to Attorney Phillip O'Riley who represented OSWALD inquiring as to the whereabouts of said written agreement.   This correspondence set forth the terms of the proposed agreement including the term that RHODES will receive 10% of the gross sales of the rebar shaker.  This letter is attached hereto as Exhibit "A".

15.   Over the next few years, OZTEC began production, testing and advertising, including but not limited to advertisements in several publications beginning in Summer of 2002.   Testing was done by The University of Tennessee, Department of Civil and Environmental Engineering in August of 2003.  OSWALD never told RHODES that sales of RHODES' invention had begun.   RHODES suspected, but did not know, that sales were occurring.

16.   When RHODES asked OSWALD about his portion of the sales, OSWALD was vague and evasive and continued to mislead RHODES into believing he was not yet owed any monies from sales because there had been no sales to date.

17.   On or about March 22, 2006 RHODES received correspondence from Attorney

3

Lanning G. Bryer on behalf of OSWALD, offering to buy RHODES' ownership interest in the patent for the Rebar Shaker. Said letter is attached as Exhibit "B".

18.     On May 18, 2006, Attorney Scremin sent a letter to Attorney Bryer requesting information on the volume of sales of the vibrator so that his client could logically make a determination as to whether to sell his interest in the patent. A copy of said letter is attached as Exhibit "C".

19.     On June 12, 2006, Attorney Scremin sent a followup letter to Attorney Bryer inquiring about a response to his May 18, 2006 letter. A copy of said letter is attached as Exhibit "D".

20.     On June 21, 2006, OSWALD'S and OZTEC'S lawyer sent a letter to Attorney Scremin asserting that as a 50/50 owner, OSWALD had the right to sell the invention independent of RHODES, in absence of an agreement to the contrary. A copy of said letter is attached as Exhibit "E". Said letter then stated that there was no "formal or legal partnership, contract or agreement" between the parties. This letter constituted the first notice to RHODES that the terms under which he gave up 50% of his invention to OSWALD and OZTEC was not being honored.

21.     Despite OSWALD'S numerous representations that an "agreement" would be forthcoming, OSWALD never intended to enter into such an agreement. The representation that an agreement was forthcoming was false at the time OSWALD made said misrepresentations.

22.     RHODES relied to his material detriment upon the accuracy of the representations of OSWALD that RHODES would receive 10% of gross sales and that an agreement was forthcoming from OSWALD and OZTEC to reflect this arrangement. But for

4

the fraudulent representations by OSWALD, RHODES would not have entered into the patent with OSWALD. Rather, RHODES would have secured financing from another company to avoid the foreseeable damage that would be caused by OSWALD and OZTEC's failure to pay RHODES his percentage of gross sales.

## COUNT I - BREACH OF ORAL AGREEMENT AGAINST OSWALD AND OZTEC

23.     Plaintiff adopts and incorporates paragraphs one (1) through twenty-one (21) as if each were fully set forth herein.

24.     This is a cause of action for breach of an oral agreement against OSWALD and OZTEC.

25.     Defendant, OSWALD, orally agreed with RHODES to give RHODES 10% of gross sales in exchange for RHODES allowing OSWALD to be a 50/50 owner of the Rebar Shaker invented by RHODES.

26.     RHODES fully performed under the oral agreement in that he allowed OSWALD to become a 50/50 owner of the invention. RHODES fully performed all conditions precedent under the contract necessary to receive his 10% of gross sales.

27.     Demand was made by RHODES under the oral agreement to be paid the 10% of gross sales. Defendants refused to pay same, asserting that RHODES did not have a "formal" or "legal" contract.

28.     As a direct and proximate result of RHODES' reliance upon the oral agreement made with OSWALD, RHODES has suffered damages.

5

29.    RHODES suffered significant financial losses, including but not limited to loss of 10% of gross sales, loss of 50% ownership in his patent, and other related expenses, as a direct and proximate result of OSWALD'S breach of oral agreement.

WHEREFORE, Plaintiff ROBERT RHODES demands judgment against FRED OSWALD and OZTEC for compensatory damages, pre-judgment interest and costs associated with bringing this action and demands a trial by jury on all issues so triable as of right.

## COUNT II - FRAUD IN THE INDUCEMENT AGAINST OSWALD AND OZTEC

30.    Plaintiff adopts and incorporates paragraphs one (1) through twenty-one (21) as if each were fully set forth herein.

31.    This is a cause of action for fraud in the inducement against OSWALD and OZTEC.

32.    Defendant, OSWALD, made material representations to RHODES that OSWALD would give RHODES 10% of gross sales in exchange for RHODES allowing OSWALD to be a 50/50 owner of the patent for the rebar shaker invented by RHODES. At the time OSWALD made these representations, he had the present intent not to perform, to wit: provide to RHODES 10% of the gross sales of the rebar shaker.

33.    RHODES detrimentally relied on the assurances made by OSWALD that he would be paid 10% of the gross sales. But for the misrepresentations made by OSWALD, RHODES would not have allowed OSWALD to apply for a joint patent on his invention.

34.    As a direct and proximate result of RHODES' reliance upon the

6

misrepresentations made by OSWALD, RHODES has suffered damages.

35.     RHODES suffered significant financial losses, including but not limited to loss of 10% of gross sales, loss of 50% ownership in his patent, and other related expenses, as a direct and proximate result of OSWALD'S fraud in the inducement.

WHEREFORE, Plaintiff ROBERT RHODES demands judgment against FRED OSWALD and OZTEC for compensatory damages, pre-judgment interest and costs associated with bringing this action and demands a trial by jury on all issues so triable as of right.

## COUNT III - DECEPTIVE AND UNFAIR TRADE PRACTICES AGAINST OSWALD AND OZTEC

36.     Plaintiff adopts and incorporates paragraphs one (1) through twenty-one (21) as if each were fully set forth herein.

37.     This is an action for damages under the Florida Deceptive and Unfair Trade Practices Act., to wit: Fla. Stat. §501.201, *et seq.*

38.     At all times material hereto, RHODES was a "consumer" under the provisions of Fla. Stat. §501.203(7) in that he is a person engaged in trade or commerce.

39.     OSWALD's placing himself on the patent application while never intending to compensate RHODES for the sales of his invention was an unfair and deceptive trade practice in that it was immoral, unethical, oppressive, unscrupulous or substantially injurious to RHODES. Defendants' actions in  usurping Plaintiffs' business and in essence stealing his invention also constitute unlawful methods of competition.

40.     Plaintiff RHODES is entitled to actual damages, as well as reasonable costs

and reasonable attorneys fees, pursuant to Fla. Stat. §501.2105.

41.     RHODES has retained the undersigned counsel and has agreed to pay said counsel a reasonable fee for representation in this matter.

42.     As a direct and proximate result of the unfair and deceptive trade practices of OSWALD and OZTEC, RHODES has suffered actual damages, costs and attorneys fees expended in bringing this action.

WHEREFORE, Plaintiff ROBERT RHODES demands judgment against FRED OSWALD and OZTEC INDUSTRIES, INC. for actual damages, costs, pre-judgment interest, reasonable attorneys fees and demands a trial by jury on all issues so triable as of right.

### COUNT IV - UNJUST ENRICHMENT

43.     Plaintiff adopts and incorporates paragraphs one (1) through twenty-one (21) as if each were fully set forth herein.

44.     This is an action for unjust enrichment against Defendants OSWALD and OZTEC.

45.     In relying upon Defendants' misrepresentation, RHODES shared his considerable expertise, his invention, and ownership in the patent for the Rebar Shaker. As a direct and proximate result of Defendants' wrongdoing, Plaintiff conferred a benefit upon Defendants. Said benefits were in the form of ownership interest in a patent and the profits obtained therefrom.

46.     Defendants have an appreciation of that benefit in the form of said profits.

47.     Defendants have accepted and retained the benefits from the receipt of said profits

8

under circumstances that make it inequitable for Defendants to retain said benefits without paying the value thereof.

WHEREFORE, RHODES demands judgment against OSWALD and OZTEC for compensatory damages, pre-judgment interest, post-judgment interest, costs, and such other relief as the Court may deem just and proper.

## COUNT V - ACCOUNTING

48.     Plaintiff adopts and incorporates paragraphs one (1) through twenty-one (21) as if each were fully set forth herein.

49.     This is an action for an accounting.

50.     Plaintiff has no adequate remedy at law.

51.     Pursuant to the representations made by OSWALD on behalf of OZTEC, RHODES is entitled to compensation of 10% of the gross sales of the Oztec-Rhodes Rebar Shaker.

52.     Defendants' misrepresentations and falsehoods have misled the Plaintiff to the Plaintiff's injury and to Defendants' own pecuniary advantage.

53.     As such, RHODES is entitled to an accounting to determine what sales have occurred to date.  RHODES has demanded a complete accounting for all years since the date of inception, but said accounting has not been provided by OSWALD or OZTEC.

WHEREFORE, RHODES demands an accounting from OSWALD and OZTEC in order to determine the amount of compensation that is due RHODES.

## DEMAND FOR JURY TRIAL

54.     Plaintiff ROBERT RHODES demands a trial by jury on all issues so triable as of

9

right.

DATED this **1** day of April, 2008.

WILLIAM G. OSBORNE, ESQUIRE
Florida Bar No. 273783
WILLIAM G. OSBORNE, P.A.
538 E. Washington Street
Orlando, Florida 32801
(407) 422-5385
(407) 422-5381 (Facsimile)
wgo_pa@hotmail.com
Attorney for Plaintiff

10

EXHIBIT A



**Law Offices** Anthony J. Scremin, P.A.

37 Northeast 26th Street, Miami, Fla. 33137

*A. J. Scremin*
(305) 576-8880
Fax (305) 573-2313

February 11, 2002

Phillip O'Riley, Esq.
1000 Franklin Avenue, 3rd Floor
Garden City, New York 11530

RE:   Agreement for share and proceeds from patent between
       Robert Rhodes and Fred Oswald, a/k/a Rhodes Rebar Shaker

Dear Phil:

The purpose of this letter is to inquire as to when the agreement will be completed between my client, Robert Rhodes and your client, Fred Oswald of Oztec Industries, Inc.

In my conversations with Fred and my client, I have been advised that you will be drawing up an agreement relative to the percentage of monies my client, Robert Rhodes will receive from Oztec Industries relative to the production and sale of the patented Rhodes rebar shakers that is owned on a 50/50 basis by Fred Oswald and my client.   In discussing this matter with Fred Oswald, he had indicated to me that you would be drawing up an agreement wherein my client would get ten percent (10%) of the gross sales of the rebar shaker when Fred Oswald's company gets paid for the sale of same.

In my conversations with Fred and also my client, I learned that you lost friends in the World Trade Center terrorist attack and it had taken a toll on you relative to some of your work performance.   However, I have been in touch with your office since the beginning of September of last year and I still have not received even a rough draft of same from you.

Phillip O'Riley, Esq.
February 11, 2002
Page Two

Please get back to me at your earliest possible convenience and let me know what is happening relative to this agreement so that I can get my client, Robert Rhodes an update on same.

Thank you in advance for your immediate attention to this matter.

Very truly yours,

ANTHONY J. SCREMIN

AJS:sr

EXHIBIT B

# LADAS & PARRY LLP
## INTELLECTUAL PROPERTY LAW

Lanning G. Bryer  lbryer@ladas.com
212.708.1870

26 West 61st Street • New York, New York 10023-7604
P 212.708.1800 • F 212.246.8959 • F 212.246.8925 • nymail@ladas.com • www.ladas.com

March 22, 2006

Mr. Robert Rhodes
2503 Valley View Road
Dandridge, Tennessee 37725

Dear Mr. Rhodes:

      Re: "Vibrator and Related Method" – U.S. Patent No. 6,960,011
      (Our Ref: NPA 050167:753)

      Our firm acts as intellectual property counsel to your colleague, Mr. Fred Oswald.

      As you know, Fred and yourself are named as joint inventors or "co-patentees" for an invention entitled "Vibrator and Related Method" and for which a patent has been granted under U.S. 6,960,011. As you may be aware, Fred has spent considerable time and expense in an effort to develop, market and sell rebar vibrators using the invention since your initial conversation some years ago. To date, sales have been nominal, but the expenses incurred in development and marketing have already exceeded $500,000.

      Nevertheless, Fred would like to give you some compensation, so he has requested that we approach you to discuss your willingness to divest your ownership interest in the patent for an agreed upon consideration.

      When you get this letter, please telephone me to discuss this offer.

      We look forward to hearing from you.

Very truly yours,

Lanning G. Bryer

LGB:SJL

---

224 South Michigan Avenue, Chicago, IL 60604 • 5670 Wilshire Boulevard, Los Angeles, CA 90036
52-54 High Holborn, London WC1V 6RR, England • Dachauerstrasse 37, 80335 Munich, Germany

EXHIBIT C



**Law Offices Anthony J. Scremin, P.A.**

37 Northeast 26th Street, Miami, Fl. 33137

*Anthony J. Scremin*
(305) 576-8880
Fax (305) 573-2313

May 18, 2006

Lanning G. Bryer, Esq.
Ladas & Parry, LLP
Intellectual Property Law
26 West 61st Street
New York, New York 10023-7604

RE:   "Vibrator and Related Method" U.S. Patent No. 6,960,011
       Your Ref:  NPA 050167:753
       My Client:  Robert Rhodes

Dear Mr. Bryer:

The purpose of this letter is in response to your correspondence of May 4, 2006.

My secretary will be in touch with you to try and set up a phone conference relative to this matter with my client, Robert Rhodes and your client Dr. Oswald.

As you are well aware from my previous correspondence, my client is very interested in finding out what sales have been made of the product as well as the alleged cost that your client has told him he has incurred.

At this point, my client is rather upset that he has had no access to any documents or records concerning the expenditures and sales of the product.

Please also let me know whether you want to try and sit down on a personal basis with the records and documents in Orlando or wherever they are at so that we can review same before we can logically make a determination as to whether or not it would be feasible for my client to sell his interest in the patent.

Lanning G. Bryer, Esq.
Ladas & Parry, LLP
Intellectual Property Law
May 18, 2006
Page Two


Please get back to me immediately relative to my request for a review of the records and documents as well as setting up a conference.

My secretary will also be in touch with your secretary or your office to set up a phone conference relative to this matter.


Very truly yours,

ANTHONY J. SCREMIN

AJS:sr

**Law Offices Anthony J. Scremin P.A.**

37 Northeast 26th Street, Miami, Fla. 33137

EXHIBIT D



**Law Offices** **Anthony J. Scremin, P.A.**

37 Northeast 26th Street, Miami, Fl. 33137

*Anthony J. Scremin*
(305) 576-8880
Fax (305) 573-2313

June 12, 2006

LanningG. Bryer, Esq.
Ladas & Parry, LLP
Intellectual Property Law
26 West 61st Street
New York, New York 10023-7604

RE:   Patent between Robert Rhodes and Dr. Oswald, a/k/a
        Rhodes Rebar Shaker
        Your Ref:  NPA 050167:753
        My Client:  Robert Rhodes

Dear Mr. Bryer:

The purpose of this letter is to solicit your cooperation relative to the above
matter and your previous correspondence relative to a possible buy out of my
client's interest in the above patented item.

In my last correspondence, I indicated to you that we needed to receive and
review records concerning the sales and expenses on said invention by your
client in this company.

To date, I have not received a response back from you relative to a possible
meeting or where we can review the records.

Please get back to me immediately relative to this matter so that we can possibly
avoid litigation and production of documents pursuant to same.

At this point, my client is rather concerned that no good faith effort has been
made on behalf of his partner to keep him advised of the financial proceedings
and sales of the invention in question,

Lanning G. Bryer, Esq.
June 12, 2006
Page Two

If I do not hear back from you immediately relative to this matter, my client has
advised me to go forward with litigation so that this matter can be brought to a
conclusion.

PLEASE GOVERN YOURSELF ACCORDINGLY!

Very truly yours,

ANTHONY J. SCREMIN

AJS:sr

cc: Client

EXHIBIT E

# LADAS & PARRY LLP

INTELLECTUAL PROPERTY LAW



| Lanning G. Bryer | | lbryer@ladas.com |
| --- | --- | --- |
| | | 212.708.1870 |

26 West 61st Street • New York, New York 10023-7604
P 212.708.1800 • F 212.246.8959 • F 212.246.8925 • nymail@ladas.com • www.ladas.com

June 21, 2006

**Via Facsimile**
Law Offices of Anthony J. Scremin
37 N.E. 26th Street
Miami, Florida 33137-4405

Fax No: 305-573-2313
No. of Page: 3

Dear Mr. Scremin:

Re: "Vibrator and Related Method" - U.S. Patent No. 6,960,011
(Your Ref: Robert Rhodes)
(Our Ref: NPA 050167:753)

1.  Reference is made to your letter of June 12, 2006 in regard to the matter above.

2.  Before addressing the issues raised in your June 12th letter, please note that we have made several attempts to contact your office by telephone to which we have not received the benefit of a reply. Notwithstanding the foregoing, we are somewhat surprised by the contentious nature of your letter.

3.  We note that both Mr. Oswald and Robert Rhodes are listed as co-patentees of U.S. Patent No. 6,960,011. Under U.S. patent law, both Mr. Rhodes and Mr. Oswald are free to exploit the patent independent of the other should they so choose. Patents may be owned jointly by two or more persons and any joint owner may manufacture, use, offer for sale, sell and import the invention for his or her own profit provided they do not infringe another's patent rights, without regard to the other joint owners, and may sell the interest or any part of it, or grant licenses to others, without regard to the other joint owners, unless the joint owners have made a contract governing their relation to each other. Section 262 of the Patent Act provides:

224 South Michigan Avenue, Chicago, IL 60604 • 5670 Wilshire Boulevard, Los Angeles, CA 90036
52-54 High Holborn, London WC1V 6RR, England • Dachauerstrasse 37, 80335 Munich, Germany

LADAS & PARRY LLI
· INTELLECTUAL PROPERTY LAW

Anthony J. Scremin, Esq.                                                                          2
June 21, 2006

> *"In the absence of any agreement to the contrary, each of
> the joint owners of a patent may make, use or sell the
> patented invention without the consent of and without
> accounting to the other owners"[1]*

4.      In view of the fact that there is no formal or legal partnership, contract
or agreement between the parties, both Mr. Oswald and Mr. Rhodes are free to
exploit the patent as they see fit.   To wit, your contention in paragraph five of
your letter that the parties are "partners" is both factually and legally
erroneous.

5.      In our letter of March 22, 2006, we advised that Mr. Oswald has
chosen to attempt to manufacture and develop a marketable product relative to
the instant patent.  To date, considerable expenses have been incurred by Mr.
Oswald in an effort to make this invention commercially viable, while sales
have been negligible.  At the same time, so far as we are aware, Mr. Rhodes
has chosen not to independently develop and market a product based upon the
patent, which is his right.  While you have requested that our client disclose
his confidential books and records relative to the expenditures and sales made
to date, this request is unreasonable in that the parties have no formal
relationship. Simply stated, Mr. Oswald is under no obligation to disclose his
books and records to Robert Rhodes based merely upon the fact that they are
listed as co-patentees.

6.      Although Mr. Oswald would like to continue pursuing this venture
with the comfort of knowing that his company has unfettered ownership in the
patent for which a marketable product could be based upon, he is fully entitled
under the law and willing to continue his business pursuits in the present
manner. This is true regardless of whether or not Mr. Rhodes ever intends to
develop and exploit a marketable product on his own based upon the patent.

7.      Notwithstanding the foregoing, Mr. Oswald would like to continue to
explore your client's willingness to divest his ownership interest in U.S.
Patent No. 6,960,011.  Towards that end, Mr. Oswald is prepared to offer
$20,000 to Mr. Rhodes in consideration for assigning his ownership interest in
the subject patent.

---

[1] *See* 35 U.S.C. §262.

**LADAS & PARRY** LLP
INTELLECTUAL PROPERTY LAW

Anthony J. Scremin, Esq.                                                    3
June 21, 2006

8.  .  We look forward to your more professional reply sans upper-case
lettering.

                                                    Very truly yours,

LGB: SJL                                             Lanning G. Bryer

cc:  Mr. Fred Oswald [via e-mail]